## STATE BANK OF ST. ANTHONY VILLAGE v.
## EARL WELCH EXCAVATING COMPANY, INC.,
## AND OTHERS.
## UNITED BONDING INSURANCE COMPANY, APPELLANT.

184 N. W. (2d) 5.

February 5, 1971—No. 42238.

*Robert L. Schnell,* for appellant.
*Burton R. Sawyer,* for respondent.

Heard before Knutson, C. J., and Nelson, Otis, Rogosheske, and Frank T. Gallagher, JJ.

OTIS, JUSTICE.

This appeal arises out of an action brought by State Bank of St. Anthony Village against United Bonding Insurance Company to recover money loaned by the bank to Earl Welch Excavating Company, Inc. Liability is predicated on a finding that John-Dee, Inc., was acting as the bonding company's agent in entering an

agreement to give the bank priority in the disbursement of funds due the excavating company from a prime contractor, one Horace Montgomery. The trial court held that the bonding company was liable to the bank for John-Dee's breach of contract, and United appeals from the judgment entered pursuant to the court's findings.

The facts are not in dispute. In July 1965, Earl Welch entered a subcontract with Montgomery for earth removal in connection with the construction of Moundsview Trailer Park. In order to obtain the contract, Welch was required to secure through John-Dee a performance bond written by United. As a condition for writing the bond, United insisted on Welch's entering an agreement which provided for an escrow account for the deposit of sums due Welch under his contract with Montgomery. Withdrawals were to be made only by checks cosigned by United. John-Dee was designated by United to supervise the handling of the account.

On August 25, 1965, Welch secured from plaintiff bank a loan of $26,000, induced by the following agreement contained in a letter from John-Dee to the bank:

"August 25, 1965

\* \* \* \* \*

"RE: Earl Welch Excavating Company
"Gentlemen:

"As Attorneys-in-Fact for United Bonding Insurance Company, our company exercises joint control over the fund receipts and disbursements for Earl Welch Excavating Company, Inc. on the Moundsview Trailer Park job they are doing for Horace Montgomery.

"The monthly estimates for work performed on this job are normally received by the 15th of the month. We will see to it that the first disbursements from these receipts are made to your bank to amortize their loan with you in accordance with the schedule you established.

"For our records, please send us a copy of the note agreement and amortization schedule.

> "Sincerely yours,
> "JOHN-DEE, INC.
> "/s/ Richard C. Lund
> > "Richard C. Lund"

United did not expressly authorize John-Dee to enter this agreement and had no knowledge of its execution.

At the time Welch secured his loan from the bank, he did not disclose to the bank that he had borrowed $25,000 from one Paul Anderson. As a condition of that transaction, Anderson secured from United, through John-Dee, a guaranty bond to insure repayment.

In September, Montgomery paid Welch on his subcontract a sum exceeding $15,000 which Welch delivered to John-Dee. In violation of its agreement with the bank, John-Dee thereupon paid Anderson $10,000, put $3,600 in the escrow account, and retained the balance to apply on what Welch then owed John-Dee. In October, the Internal Revenue Department filed a tax lien against Welch in a sum exceeding $32,000, which put Welch out of business before the completion of his contract. The sum of $8,666.67 was the amount of the installment due the bank before Welch terminated his operations.

The only issue for decision is whether as a matter of law John-Dee had either apparent or implied authority to enter the agreement with the bank, the violation of which gave rise to plaintiff's damages.

The trial court found that a substantial portion of the bank's loan to Welch was used for expenses in connection with the performance of the Montgomery contract. It held that the representations made by John-Dee to the bank "were fairly within the authority delegated by United," and that it was "to the interest of United because of its Performance Bond that the job be completed by the Excavating Company." Consequently, the court concluded that John-Dee was acting as agent of United and

found United liable to the bank in the sum of $8,666.67. In an accompanying memorandum, the court laid stress on the fact that United had an interest in completion of the Montgomery contract because it had written the performance bond for Welch. We concur in the trial court's conclusions.

United argues that (1) John-Dee had no express authority to enter the agreement of August 25 with the bank although there was a written contract between them;[1] (2) United had no actual knowledge of the agreement; and (3) no prior arrangement of this kind had been entered by John-Dee to the knowledge of United.

It is the position of United that the bank could have protected itself by depositing the $26,000 in the escrow account. Be that as it may, the issue in the case is whether John-Dee was acting as United's agent in making the agreement of August 25. We are of the opinion that the trial court was justified in concluding that the contract was executed within the scope of John-Dee's authority. United had written a performance bond of $103,000 for Welch in connection with the Montgomery contract and a separate guaranty bond in connection with Anderson's loan to Welch of $25,000. Welch from the beginning was in an extremely precarious financial situation. The loan from the bank was of critical importance in keeping Welch's performance of the Montgomery contract from collapsing. In view of the express authority which United conferred on John-Dee to write these bonds, and in the light of all their relationships, it was reasonable for the bank to assume that John-Dee was acting on behalf of United in inducing the $26,000 loan to Welch. There was evidence on which the trial court could properly find, as it did, that most of the proceeds of that loan were applied on the Montgomery con-

---

[1] In this connection, United relies on Restatement, Agency (2d) § 167: "If a person dealing with an agent has notice that the agent's authority is created or described in a writing which is intended for his inspection, he is affected by limitations upon the authority contained in the writing, unless misled by conduct of the principal."

tract. Consequently, we hold that there was sufficient evidence to support a finding of agency, and the judgment is therefore affirmed.

Affirmed.